IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 23-cv-01119-GPG-NRN

ANDREW SOLIS, JR. and CHRISTINA SOLIS,

Plaintiffs,

v.

DICK'S SPORTING GOODS, INC.,

Defendant.

---

**ORDER ON
PLAINTIFF'S MOTION TO AMEND SCHEDULING ORDER AND FOR
LEAVE TO AMEND COMPLAINT TO SEEK EXEMPLARY DAMAGES
(ECF NO. 41)**

---

**N. REID NEUREITER**
**United States Magistrate Judge**

This matter comes before the Court on Plaintiffs Andrew Solis, Jr. and Christina

Solis's Motion Modify the Scheduling Order and for Leave to Amend the Complaint to

Seek Exemplary Damages ("Motion to Amend"). ECF No. 41. Defendant Dick's Sporting

Goods ("Dick's") filed its response to the Motion on July 17, 2024. ECF No. 53. Plaintiffs

filed their reply on August 16, 2024. ECF No. 62. The Court held argument on the issue

on August 21, 2024. *See* ECF No. 63.

Having considered the filings by the Parties and the arguments made at the

hearing, the Court will **GRANT** Plaintiff's Motion to Amend.

## I.   Background

As alleged in the Complaint, this matter arises from a July 14, 2021 bicycle crash

when Mr. Solis was riding his newly purchased bicycle from Dick's and less than one

mile into the ride, the left pedal detached and caused Mr. Solis to fall. Mr. Solis suffered serious bodily injuries including 6 fractured ribs, a hematoma on his scalp, and a traumatic brain injury with multiple brain bleeds. Plaintiffs allege that Dick's failed to properly assemble and inspect the bicycle by: (1) not fully threading and tightening the pedals into the crankarms during assembly on July 3, 2021, and (2) misrepresenting the pedals as properly threaded in the July 11, 2021 Point of Sale Inspection.

Dick's has admitted liability and does not dispute that the bicycle pedals were improperly treaded and tightened at the time the bicycle was sold to Mr. Solis. ECF No. 53 at 1.

Having conducted discovery, Plaintiffs say they have identified evidence confirming that the pre-sale assembly and inspection of Mr. Solis's bicycle were attended by circumstances of willful and wanton conduct. Plaintiffs argue that this new evidence supports a prima facie basis for exemplary damages.

In the Motion to Amend, Plaintiffs point to the following evidence to justify adding a claim for exemplary damages:

- Bike builders at Dick's are required to grease the bike pedal threads and use a pedal wrench to tighten the pedals to a proper torque value.

- All bicycles at Dicks are to be built ready to ride and should never be on the sales floor less than 100 percent complete.

- Each bicycle at Dick's is assigned a "Bike Inventory Form" that follows the bicycle from assembly to sale.

- The Bike Inventory Form includes boxes to handwrite in the bicycle identification information, who assembled the bicycle, the Point of Sale Inspection, and the

Buyer's Checklist. Printed on the back of the Bike Inventory Form is the Assembly Checklist.

- Although identifying information is handwritten in the top of the Bike Inventory Form for Mr. Solis's bicycle, the person who assembled the bicycle did not sign or perform a required Point of Sale Inspection.

- The Assembly Checklist requires the bike builder to check off over 30 items and bicycle components to confirm each step during assembly was correctly completed. Included is a column labeled "☐Tighten* (Check for all) . . . _Pedals," and the bike builder is specifically directed to "*Tighten each component to the appropriate specifications, as outlined in the bicycle's User Manual." The bike builder is required to print their name, sign, and date the Assembly Checklist.

- The Assembly Checklist is supposed to be completed for every bicycle assembled and placed on the floor for sale.

- It is important to perform and check off each item on the Assembly Checklist because if a bike builder missed an item, it could result in a crash and associated injury to the rider.

- Not checking off all the components on the Assembly Checklist increased the likelihood that a step could be missed during the assembly process, putting purchaser/riders at risk.

- When Mr. Solis purchased his bicycle, a photograph taken that day showed there was a gap between the pedal spindle and crank arm, confirming the left bicycle pedal was not fully threaded.

- The fact that Mr. Solis's bicycle was on the floor with an improperly or incompletely threaded pedal shows that the bike builder either did not use or did not complete the Assembly Checklist that would have revealed he had not properly installed the pedals so they were safe to ride.

- The bike builder competed the Bike Inventory Form paperwork by writing in the identifying bike information, his name, the store location and date, but did not complete the Assembly Checklist or the steps required in the Assembly Checklist to confirm that all parts were properly assembled on Mr. Solis's bicycle.

- Had the bike builder used and completed the Assembly Checklist as purportedly required by Dick's, then he should have made a check mark next to all 30-plus items, including the pedals, and he would have signed it, attesting to the items having been completed. Instead, the Assembly Checklist was left blank.

- The bike builder was aware of the danger and serious risk of injury for failing to follow the bicycle assembly instructions and not completing the Assembly Checklist was more likely to lead to a missed step and an injury.

Dick's, for its part, does not dispute (at least for purposes of this motion) that if this lawsuit were brought against the bicycle assembler, a non-managerial Dick's employee, then adding a claim for exemplary damages might be appropriate. Dick's also does not challenge the timeliness of the Motion to Amend, given the course of discovery in this case. *See* ECF No. 53 at 2. Instead, Dick's objection to the amendment to add exemplary damages is that it seeks to impose punitive damages, not on the non-managerial employee, but on the principal—Dick's—without evidence that a Dick's

managerial employee was engaged in the allegedly willful and wanton conduct or that Dick's ratified the willful and wonton conduct in any way.

Per Dick's, the general rule in Colorado is that a corporate defendant is not liable for exemplary damages based on the conduct of a non-managerial employee absent a showing that the corporate defendant "authorized or approved the act for which exemplary damages are claimed; or, that it approved of or participated in the wrong of its agent; or, that it failed to exercise proper care in selecting its servants." *Holland Furnace Co. v. Robson*, 402 P.2d 628, 631 (Colo. 1965) (modifying a judgment to remove the exemplary damages award where the record was silent as to whether a furnace company authorized or ratified fraudulent conduct of its employees); *see also Miller v. Solaglas Cal., Inc.*, 870 P.2d 559, 569 (Colo. App. 1993) (sufficient evidence for exemplary damages claim where wrongly installed windshield was the result of corporate policy and not the one-time mistake of an employee).

## II.    Standard for Allowing Exemplary Damages Under Colorado Law

Exemplary damages are intended "to punish and penalize [a defendant] for certain wrongful and aggravated conduct and to serve as a warning to other possible offenders." *Beebe v. Pierce*, 521 P.2d 1263, 1264 (1974) (citation omitted). In diversity cases such as this, a motion to amend a complaint to add an exemplary damages claim is governed by Colorado state law. *Klein v. Grynberg*, 44 F.3d 1497, 1503 (10th Cir. 1995). Under Colorado law, a claim for exemplary damages may not be included in any initial claim for relief, and may only added by amendment to the pleadings "after the exchange of initial disclosures ... and the plaintiff establishes prima facie proof of a triable issue." Colo. Rev. Stat. § 13–21–102(1.5)(a).

Prima facie proof of a triable issue requires "a showing of reasonable likelihood that the issue will ultimately be submitted to the jury for resolution." *Stamp v. Vail*, 172 P.3d 437, 449 (Colo. 2007) (quoting *Leidholt v. Dist. Ct.*, 619 P.2d 768, 771 n.3 (Colo. 1980)). Such proof is established through discovery or evidentiary means. *Id.* It is ultimately the jury who will decide the merits of an exemplary damages claim. *See id.*; *E&S Liquors, Inc. v. U.S. Fidelity & Guar. Co.*, No. 08-cv-01694-WYD-KLM, 2009 WL 837656, at *2 (D. Colo. Mar. 26, 2009). However, the "question of whether the plaintiff has established sufficient proof to add a claim for exemplary damages lies within the sound discretion of the trial court." *Stamp*, 172 P.3d at 449 (citation omitted). At this stage in the litigation, a plaintiff should be granted "some leeway in establishing his prima facie case." *Leidholt*, 619 P.2d at 769. As the Colorado Supreme Court has emphasized, "[t]his is a lenient standard. A plaintiff should have an opportunity to test the merits of any claim for relief that is supported by the underlying facts of the case." *Stamp*, 172 P.3d at 450 (citation omitted); *see also RCHFU, LLC v. Marriott Vacations Worldwide Corp.*, No. 16-cv-1301-PAB-GPG, 2018 WL 3055772, at *4 (D. Colo. May 10, 2018) ("At this stage of the litigation, the Court is only concerned with whether the evidence, when viewed in the light most favorable to Plaintiffs, is sufficient to make out a prima facie case of willful and wanton behavior for the purpose of allowing Plaintiffs to amend their Complaint to include exemplary damages, not whether such evidence is sufficient to defeat a motion for summary judgment or to result in a jury verdict in Plaintiffs' favor."(citation omitted))

A claim for exemplary damages under Colorado law is appropriate where the events resulting in a personal injury are "attended by circumstances of fraud, malice, or

willful and wanton conduct." Colo. Rev. Stat. § 13–21–102(1)(a). Willful and wanton conduct is defined as "conduct purposefully committed which the actor must have realized as dangerous, done heedlessly and recklessly, without regard to consequences, or of the rights and safety of others, particularly the plaintiff." *Id.* § 13–21–102(1)(b). The Colorado Supreme Court has held that "[w]here the defendant is conscious of his conduct and the existing conditions and knew or should have known that injury would result, the statutory requirements" are met. *Coors v. Sec. Life of Denver Ins. Co.*, 112 P.3d 59, 66 (Colo. 2005). "Simple negligence cannot support such an award"; rather, "where a defendant is conscious of both its conduct and the existing conditions, and knew or should have known that injury would result, the requirements of section 13-21-102 are met." *Blood v. Qwest Servs. Corp.*, 224 P.3d 301, 314 (Colo. App. 2009) (citations omitted). Conduct is willful and wanton if it is "a dangerous course of action" that is consciously chosen "with knowledge of facts, which to a reasonable mind creates a strong probability that injury to others will result." *Steeves v. Smiley*, 354 P.2d 1011, 1014 (Colo. 1960) (holding that evidence of a driver's decision to travel at a high speed and to pass other cars at night on a single-lane highway despite repeated warnings from his passengers that he was driving too fast was sufficient to present the question of willful and wanton conduct to the jury in a wrongful death action).

## III.    Decision

Ultimately, the question for the Court is whether, at this early stage, Plaintiffs have met the relatively low burden of making a prima facie showing that Dick's can be held responsible in exemplary damages for the conduct of its employee.

Citing the Tenth's Circuit's application of Colorado law, Dick's emphasizes the

strict legal standard that must be met in order to impose on a corporate defendant

exemplary damages for the act or acts of an employee:

> Punitive damages can properly be awarded against a master or other
> principal because of an act by an agent if, but only if, (a) the principal or
> managerial agent authorized the doing and manner of the act, or (b) the
> agent was unfit and the principal or managerial agent was reckless in
> employing or retaining him, or (c) the agent was employed in a managerial
> capacity and was acting tin the scope of employment, or (d) the principal or
> managerial agent of the principal ratified or approved the act.

*Fitzgerald v. Mt. States Tel. and Tel. Co.*, 68 F.3d 1257, 1263 (10th Cir. 1995) (citing

Restatement (Second) of Torts § 909, cmts. (a) & (b); Restatement (Second) of Agency

§ 217C (1958)). For ratification or approval, the principal must have knowledge of the

facts and there must be some conduct indicating assent to those known facts.

*Fitzgerald*, 68 F.3d at 1264; *see also Goetz v. Sec. Indus. Bank*, 508 P.2d 410, 412

(Colo. App. 1973) (Bank officer's involvement in wrongly withholding property from the

plaintiff sufficient to establish ratification of the wrongful conduct for purposes of claim

for exemplary damages). "[R]etention in employment, standing alone, is not conclusive

of . . . ratification." *Frick v. Abell*, 602 P.2d 852, 856 (Colo. 1979).

Dick's emphasizes that there is no evidence that would establish that the Dick's

employees who assembled or inspected the subject bicycle were acting in a managerial

capacity at the time of the inspection or assembly, or that Dick's authorized or ratified

that conduct. Dick's also asserts that there is no evidence that Dick's was reckless in its

retention or training of its non-managerial employees. Dick's emphasizes that, to the

contrary, the fact that Dick's has a detailed checklist of specific parts that need to be

checked during the bicycle assembly process shows that Dick's, as a company, was

cognizant of the dangers that could arise from the improper assembly of a bicycle and

8

had taken steps to ensure the safe assembly of every bicycle—the opposite of willful and wanton conduct. Indeed, Dick's had implemented an extensive training program for its bicycle technicians. Per Dick's, the fact that a single employee did not properly tighten the pedals in a single bike should not make Dick's potentially liable for exemplary damages. And, Dick's argues, to whatever extent the bicycle assembler or inspector failed to adhere to the training or to follow Dick's policies, there is no evidence that Dick's approved of these failures.

If all that had happened were a single incident of a single bicycle not being properly assembled, then Dick's would probably be right. There would be no basis for attributing the assembler's or inspector's willful or wanton conduct to the employer. But in Plaintiffs' reply, they point out that this was not an incident of a single bicycle being assembled incorrectly, or a single checklist being left blank. Instead, the evidence appears to show that on numerous instances the bicycle assembler had failed to complete the Assembly Checklist.

The question whether an employer has ratified its employee's unauthorized tortious conduct is one of fact. *DeBose v. Bear Valley Church of Christ*, 890 P.2d 214, 230 (Colo. App. 1994). A fact finder may determine that an employer has ratified its employee's tortious acts from any course of conduct, including an omission to act, that reasonably tends to demonstrate an intention on the part of the employer to ratify the conduct. *Id.* Retention of an employee after gaining knowledge of their tortious conduct is evidence that may prove ratification of the employee's acts, but that alone is not conclusive of ratification. *Id.* (citing *Frick*, 602 P.2d at 856). Numerous acts of an employee committed over a period of time can constitute evidence of an implied

ratification of that conduct by the employer. *Id*. (citing *Goetz* and the Restatement (Second) of Agency § 91 comment c (1958) ("knowledge [necessary for ratification] by the purported principal can be inferred . . . when he has such information that a person of ordinary intelligence would infer the existence of the facts in question")).

In this instance, Plaintiffs' counsel notified Dick's on August 21, 2021 of Mr. Solis's injuries suffered in a fall from the bicycle purchased from Dick's. Counsel requested that Dick's preserve all documents related to the inspection and assembly of Mr. Solis's bicycle. The assembler in this instance, a Mr. Hobart, was apparently never disciplined and was not terminated for failing to properly assemble this bicycle. Instead, he continued to be employed by Dick's and was later promoted to the position of Bike and Fitness Leader in January 2022. The Bike and Fitness Leader is responsible for overseeing all the bike technicians at the store and ensuring the bicycles are built on time and safely. While an employer is not obligated to terminate an employee who commits an error, failing to reprimand—and instead actually promoting—an employee who made an error that resulted in serious bodily harm is certainly a factor that could be considered in assessing whether the misconduct has been ratified.

More important than Mr. Hobart's promotion is that it appears that *every* Assembly Checklist for bicycles he assembled between July 3 and July 11, 2021 (a total of eight forms) were similarly left blank. In addition, three of the eight Point of Sale Inspections were also blank, lacking either a signature or date. *See* ECF No. 62-3. One of the specific items that needed to be checked off on the Point of Sale Inspection is "PEDALS PROPERLY THREADED." These blank and incomplete documents were *all* in violation of Dick's training and bicycle assembly protocols. Thus, the prima facie

10

evidence shows that this was not a "one off" incident of a single missing checklist for a single mis-assembled bicycle. Instead, at least for Mr. Hobart, it showed a regular practice of missing a critical step in ensuring that bicycles were being safely assembled—checking off a box for each item that needed to be properly installed. Moreover, there is no evidence of the required Point of Sale Inspection for a substantial percentage of the bikes that were sold.

In terms of Dick's own responsibility for Mr. Hobart's failures, these incomplete inspection checklists were part of Dick's corporate records. At some point, someone in management at Dick's (maybe the Bike and Fitness Leader at the time) should have verified that the assembly protocols, which are essential to ensuring the sale of a safe product, were being followed. The paper trail, had it been reviewed, would have shown that the various safety protocols that Dick's had in place were not being followed. The multiple instances of failure by Mr. Hobart to complete the Assembly Checklists indicates that, while Dick's may have had safety protocols in place, no one was taking steps to ensure that the employees who were actually building and inspecting the bicycles were following those protocols. There is additional evidence, from signatures from the few sales documents that have been produced by Dick's, that other Dick's employees were also not following the company's safety protocols.

The Court agrees with Plaintiffs that evidence that multiple employees, for multiple bicycle assemblies and inspections over the course of a period of time, were not following Dick's safety protocols shows a wider and more prevalent pattern of conduct that contradicts Dick's written training materials. It strongly suggests that not completing the required Assembly Checklist was acceptable to Dick's—a ratification by

11

inaction. Either that, or it shows willful conduct by management level personnel at Dick's who were willfully ignorant of employee misconduct in assembling the bicycles and ignoring the required checklists. After all, the information showing that the Assembly Checklists were not being followed was contained in Dick's own files.

Based on these ongoing, numerous acts by multiple employees, a juror may reasonably infer that despite what Dick's training materials state, Dick's either knew its technicians were skipping critical safety steps during the assembly and inspection of bicycles, or Dick's chose to be willfully ignorant of the information contained in its own records and failed to supervise those technicians.

"[A] motion to amend is not the stage to decide the question of whether exemplary damages will be awarded, or even whether the question should be given to the jury. Plaintiff need only make out a prima facie case for exemplary damages." *Gould v. Union Pac. R.R. Co.*, No. 19-cv-02326-PAB-NRN, 2021 WL 5181966, at *3 (Colo. Feb. 12. 2021). Here, the Court finds that Plaintiffs have made out a prima facie case against Dick's for willful and wanton conduct, or ratification and acceptance of Mr. Hobart's willful and wanton conduct. There is at least a reasonable probability of the question of exemplary damages going to the jury.

Therefore, it is **HEREBY ORDERED** Plaintiffs' Motion to Modify the Scheduling Order and for Leave to Amend the Complaint to Seek Exemplary Damages ("Motion to Amend"), ECF No. 41, is **GRANTED**. The Scheduling Order, ECF No. 16, is further **AMENDED** to allow Plaintiffs' late amendment of the Complaint to add a claim for exemplary damages, and also to include an additional claim for reckless supervision and retention of its employees, as described in the proposed First Amended Complaint

12

and Jury Demand, attached to their reply at ECF No. 62-4. Plaintiffs shall file their

proposed Amended Complaint within 24 hours of the issuance of this Order.  Dick's shall

respond in accordance with Fed. R. Civ. P. 15(a)(3).


Dated:  August 27, 2024

N. Reid Neureiter
U.S. Magistrate Judge